IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRIS WASHINGTON-EL, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 08-1688 |
| ) | |
| v. ) | Chief Judge Ambrose |
| ) | Magistrate Judge Bissoon |
| JEFFREY BEARD, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendant's Motion to Dismiss (Doc. 15) be granted.

### II. REPORT

Chris Washington-El is a state prisoner currently incarcerated in the State Correctional Institution at Fayette, located in LaBelle, Pennsylvania. Washington-El alleges in his Section 1983 prisoner civil rights Complaint that: (1) he was denied access to the courts; (2) he was denied the right to practice his religion while in solitary confinement; (3) he was retaliated against for the exercise of his First Amendment rights by being placed on the Restricted Release List ("RRL"); (4) he was denied due process in being placed on the RRL without a hearing; (5) he was denied equal protection in that other inmates placed in Administrative Custody ("AC") were released after ninety days, but he was not; (6) his long-term placement in solitary confinement violates the Eighth Amendment's prohibition on cruel and unusual punishment; (7) he was denied a prescribed nasal spray and eye drops by Physician's Assistant Myers on a few occasions (Doc. 4).

1

Defendant Beard has filed a Motion to Dismiss (Doc. 15) and Plaintiff has responded (Doc. 29).  The motion is ripe for disposition.

**A.  Applicable Standard**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, reading the complaint in the light most favorable to the plaintiff, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the complaint" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008).  A complaint must be dismissed even if the claim to relief is "conceivable," because a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, __U.S.__, 129 S.Ct. 1937, 1949 (2009).

**B.   Analysis.**

**1.   Supervisory liability.**

Defendant Beard first seeks to dismiss most of Plaintiff's claims on the basis that Plaintiff has not alleged Beard's personal involvement in many of the alleged constitutional deprivations.  Supervisory liability may not be premised solely upon a theory of *respondeat superior.*  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).  Rather, some personal involvement of the supervising official must be alleged.  Id.  Supervisory liability for Section 1983 violations can be established by evidence showing that officials: (1) participated in violating a plaintiff's rights; (2) directed others to violate a plaintiff's rights; (3) knew of, and acquiesced in, their subordinates' violation of a plaintiff's rights; or (4) knew of, and tolerated, past or ongoing misbehavior.  Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 & n.3 (3d Cir.1995).

In his first claim, Plaintiff alleges that he was "hindered" in pursuing a lawsuit in the United States District Court for the Eastern District of Pennsylvania at Civil Action No. 06-4517. Specifically, he alleges that his attorney was able to meet with him for only one hour on December 13, 2007, and one hour on March 31, 2008 (Doc. 4, ¶ 47). Further, counsel was not permitted to speak with Plaintiff by telephone on December 5, 2007, March 6, and July 5, 2008 (Id., ¶ 48). Plaintiff also asserts that he is denied the same access to the law library as the general population at SCI-Fayette (Id., ¶¶ 50-51), and that he was denied the opportunity to correspond with his co-defendants on July 7 and October 2, 2008, while preparing for a "sentence reduction" (Id., ¶ 52). Plaintiff alleges that this "hindered" his litigation of the Eastern District case, and also his preparation of a motion seeking a reduction of his sentence in a criminal matter (Id., ¶¶ 54-55). Plaintiff alleges that Defendant Beard failed to "respond or correct any of the violations that denied" Plaintiff his right of access to the courts (Id., ¶ 55).

Plaintiff's allegations are not sufficient to state a facially plausible claim of supervisory liability against Defendant Beard. Beard is not alleged to have had any direct involvement in any of the alleged events. Instead, the Beard's only involvement is alleged to have been his failure to "respond" or "correct" the alleged violations by others. This is a classic allegation of *respondeat superior* liability, and does not state a claim against Defendant Beard. Rode, supra.

Similar allegations are made concerning Plaintiff's religious practices claim. In particular, Plaintiff alleges that Chaplain Lewis, who is not a party to this action, denied Plaintiff's request to attend a religious service on October 21, 2008, and that Chaplain Lewis also denied him a copy of a "Moorish Koran" on October 26, 2008 (Doc. 4, ¶¶ 29 and 30). Plaintiff alleges that he "appealed to Defendant Beard" but that Beard failed to "respond or correct these

violations" (Id., ¶ 50).  Again, this simply is not sufficient to state a claim for supervisory liability.

Next, Plaintiff alleges that Captain Thomas Dohman retaliated against Plaintiff for grievances and a lawsuit by recommending that Defendant Beard place Plaintiff in RRL status. Defendant Beard is alleged to have "upheld the retaliation" by adopting Dohman's recommendation (Id., ¶¶ 62, 65).  Likewise, it is alleged that PA Myers denied Plaintiff his medications and that this was in retaliation for a grievance Plaintiff filed (Id., ¶ 67).  Beard is alleged to have failed to respond to or correct these violations as well (Id., ¶ 68).  Again, Plaintiff's claims of retaliation involve actions by persons other than Defendant Beard, and Beard is sued solely because he is the supervisor of the persons who are alleged to have acted improperly.  This is not sufficient to state a claim under Section 1983.

Plaintiff does allege personal involvement by Defendant Beard with respect to his fourth claim concerning a denial of due process.  This is dispositive of this claim.

Plaintiff's fifth claim is that he was denied equal protection in that he has been in solitary confinement longer than other inmates who, like Plaintiff, were placed there as a possible escape risk (Doc. 4, ¶ 79).  Defendant Beard's involvement, however, is again limited to an allegation that he failed to respond to or correct the situation (Id., ¶ 83).  These allegations fail to state a claim.

Finally, Plaintiff's seventh claim of inadequate medical care is premised upon actions taken (or not taken) by Physicians Assistant Myers.  Defendant Beard is alleged to have failed to correct Myers's conduct.  Plaintiff's allegations are nothing more than an attempt to impose liability on Beard in his position of supervisor by the mere fact of his position of authority, and his motion to dismiss should be granted with respect to this claim.

Plaintiff's claims (1)-(3), (5) and (7) should all be dismissed on the basis that Plaintiff failed to allege a facially plausible claim of supervisory liability against Defendant Beard. Several of Plaintiff claims, however, should be dismissed for other reasons as well.

## 2. **Additional Analysis: Denial of Access to the Courts (Count (1))**

Plaintiff must allege the underlying basis of the action that he alleges was impeded in order to state a claim for denial of access to the courts. Lewis v. Casey, 518 U.S. 343, 354 (1996); Christopher v. Harbury, 536 U.S. 403, 415-17 (2002). Washington-El alleges that his attempts to litigate were "impeded," and that he did not have sufficient face-to-face or telephone contact with counsel. Plaintiff does not allege, however, that he was unable to communicate with counsel by mail, nor does he allege how the asserted lack of contact actually prevented him from litigating his case.

In Christopher, the Supreme Court explicitly held that a plaintiff must identify a non-frivolous claim that was actually impacted by the complained-of activity in order to state a claim. "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." Christopher, 536 U.S. at 416. Plaintiff does not allege facts sufficient for the Court to determine that he possessed a non-frivolous claim he was forced to abandon, nor does he allege sufficient facts to state a plausible claim that the limitations on his contact with counsel caused him to lose his case. Likewise, Plaintiff provides no specifics concerning his asserted sentence reduction proceedings, and certainly has not pleaded facts that would permit a jury to conclude that he possessed a non-frivolous claim. Plaintiff has failed to state a claim for denial of access to the courts.

### 3. Additional Analysis: Due Process (Count 4)

Plaintiff's claim that Defendant Beard placed him on RRL status, thereby continuing his placement in solitary confinement without a hearing, is a claim arising under the Due Process Clause of the Fourteenth Amendment.  In order to state a claim, Plaintiff must first set out facts that demonstrate he had a protected liberty interest impaired by the Defendant's actions.  Hewitt v. Helms, 459 U.S. 460 (1983);  Morrissey v. Brewer, 408 U.S. 471 (1972).  Once the Court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it.  Morrissey, 408 U.S. at 481.

Plaintiff's claim is determined by reference to the Court of Appeals for the Third Circuit's decision in Shoats v. Horn, 213 F.3d 140 (3d Cir. 2000).  In Shoats, a prisoner had been placed in administrative custody and was maintained there in virtual isolation for eight years.  The court noted that such a long-term placement clearly gave rise to procedural due process protections under the analysis mandated by Sandin v. Conner, 515 U.S. 472 (1995).  Nonetheless, relying upon Hewitt v. Helms, 459 U.S. 460 (1983), the Third Circuit found that informal, periodic review of the prisoner's administrative custody status satisfies the requirements of due process.  Shoats, 213 F.3d at 147.

Here, the same analysis disposes of Plaintiff's claim.  While the permanency of Washington-El's placement in solitary confinement appears to satisfy the requirement that a liberty interest be implicated, the periodic review he concedes has taken place provides the process due to him.  Plaintiff disagrees with the Defendant's decision to place him in solitary confinement, and with the several, periodic decisions since that time to keep him in solitary confinement.  This, however, is insufficient to state a claim for denial of due process.  The

Supreme Court explained the scope of discretion allowed to prison administrators in circumstances similar to Plaintiff's:

> In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners inter se, and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on purely subjective evaluations and on predictions of future behavior.

Hewitt, 459 U.S. at 474. Thus, as the Third Circuit noted in Shoats, a prisoner may be placed in administrative confinement, even where no misconduct has occurred, and all that is required is that the prison provide an opportunity for the prisoner to contest the "purely subjective evaluation" of his dangerousness. Again, the holding in Shoats is instructive: "[b]ecause [the inmate] has failed to provide any support for his assertions that his PRC reviews were constitutionally inadequate, we hold that the periodic reviews conducted by the PRC . . . comport with the minimum constitutional standards for due process." Shoats, 213 F.3d at 147. As such, Plaintiff's claim also must fail for this additional reason.

### 4. Additional Analysis: Equal Protection (Count 5)

Plaintiff's assertion that his placement in Administrative Custody violates the Equal Protection Clause must be rejected. To assert a claim for a violation of equal protection, Washington-El must show that he is a member of a protected class, such as a racial or religious group, and that Defendant Beard discriminated against him on the basis of his protected class status. Bradley v. United States, 299 F.3d 197, 206 (3d Cir.2002). Washington-El makes no such allegations, and his equal protection claim fails for this additional reason.

7

### 5. Eighth Amendment Claim (Count 6)

Plaintiff's sixth claim is that he has suffered cruel and unusual punishment due to the conditions in solitary confinement. Unlike his other claims, however, Plaintiff has not challenged specific actions by other prison personnel and attempted to render Beard vicariously liable. Rather, Plaintiff has alleged that the normal conditions of solitary confinement at SCI Fayette violate the Eighth Amendment.

To state an Eighth Amendment claim, Washington-El must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). In order to state a claim, the conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id, at 834 (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions – considered alone constitutionally insufficient – may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." See Wilson v. Seiter, 501 U.S. 294, 304 (1991). In applying this test, the Court acknowledges that "[t]he Constitution . . . does not mandate comfortable prisons." Wilson, 501 U.S. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits."

Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir.1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).

Plaintiff sets forth a laundry list of differences between what is available to him in solitary confinement, and what is available to inmates in the general population. He asserts he has less access to legal materials, and to inmate assistance. He asserts a reduced right to visitation and to rehabilitative programs offered by the Department of Corrections. Further, he claims to be denied "daily showers, denied yard recreational items, or access to gym." (Doc. 4, ¶ 97). He also makes general allegations concerning his medical care and the quality of the food he receives, but offers no details (Id.).

The practice of housing certain problem prisoners in isolation from other inmates and providing only limited exercise is not a condition of confinement that violates the Eighth Amendment. "[S]egregated confinement in solitary or maximum security is not *per se* banned by the Eighth Amendment." Clifton v. Robinson, 500 F.Supp. 30, 34 (E. D.Pa.1980) (quoting Burns v. Swenson, 430 F.2d 771, 777 (8th Cir 1979)). Further, "'isolation from companionship, restriction on intellectual stimulation[,] and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render [solitary] confinement unconstitutional absent other illegitimate deprivations.'" In re Long Term Administrative Segregration of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999) (quoting Sweet v. South Carolina Dept. of Corrections, 529 F.2d 854, 861 (4th Cir.1975))(en banc); Jones v. Beard, 2008 WL 2512673, *4 (W.D.Pa. Jun 23, 2008). In sum, Washington-El's claim fails because has not identified any "illegitimate" deprivation of a constitutional right arising from his solitary confinement.

### 7. Additional Analysis: Medical claims (Count 7)

As mentioned above, Plaintiff alleges that he was seen by PA Myers on several occasions, but that Myers refused to give him nasal spray and allergy eye drops (Doc. 4, ¶¶ 94, 96). He also alleges that Myers failed to perform a full examination during sick calls (Id., ¶ 95), but does not allege that he was suffering from a serious medical condition that would have been diagnosed by such an examination. Even if Beard was made aware of these facts, and of Plaintiff's complaints that he should have been given eye drops and nasal spray, Plaintiff point to nothing that should have caused Beard to believe that Plaintiff was being mistreated:

> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [] will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

### 8. Official capacity claims

Plaintiff asserts claims against Defendant Beard both in his individual capacity and his official capacity. Defendant Beard asserts that Plaintiff's claims against him in his "official capacity" are the functional equivalent of claims against the Commonwealth of Pennsylvania and, hence, are barred. Indeed, a lawsuit against the Commonwealth of Pennsylvania would be barred by the Eleventh Amendment. Quern v. Jordan, 440 U.S. 332, 340-341 (1979). When individual Commonwealth employees are sued in their official capacity, the action is considered to be against the Commonwealth itself. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). The immunities available to Defendant Beard sued in his official capacity are the same as those possessed by the Commonwealth and, accordingly, Plaintiff's "official capacity" Section 1983 claims are barred. Id., at 167.

## III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendant's Motion to Dismiss (Doc. 15) be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C) and Local Rule 72.1.4 B, objections to this report and recommendation shall be filed on or before August 24, 2009. Failure to timely file objections may constitute a waiver of any appellate rights.

s/Cathy Bissoon<br>
CATHY BISSOON<br>
UNITED STATES MAGISTRATE JUDGE

Date:   August 7, 2009

cc:
CHRIS WASHINGTON-EL
CW-2075
SCI Fayette
50 Overlook Drive
Labelle, PA 15450