**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRIS WASHINGTON-EL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 08-1688 |
| | ) | |
| v. | ) | Judge Conti |
| | ) | Magistrate Judge Bissoon |
| JEFFREY BEARD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I**. **RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss (Doc. 60) be granted in part and denied in part.

**II. REPORT**

Chris Washington-El ("Plaintiff") is a State prisoner currently incarcerated in the State Correctional Institution at Frackville ("SCI-Frackville"), located in Frackville, Pennsylvania. Plaintiff brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging deprivations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution by fourteen Defendants, all of whom are current or former employees of the Pennsylvania Department of Corrections ("DOC"). This suit commenced with this Court's receipt of Plaintiff's motion to proceed *in forma pauperis* ("IFP") on December 10, 2008. (Doc. 1). Permission to proceed IFP was granted on December 11, 2008.

Plaintiff's original complaint (Doc. 4) named only Defendant Beard as responsible for multiple alleged constitutional violations. Upon Defendant Beard's motion (Doc. 15), the

original complaint was dismissed on September 14, 2009, without prejudice to Plaintiff filing an amended complaint. (Doc. 34). Plaintiff filed his first amended complaint on December 31, 2009. (Doc. 39). Plaintiff moved for leave to file a second amended complaint on February 5, 2010. (Doc. 42). This Court granted leave to do so, and Plaintiff's second amended complaint was filed on February 5, 2010. (Doc. 43). Defendants moved to dismiss the second amended complaint on May 7, 2010. (Doc. 60). Plaintiff responded thereto on June 14, 2010. (Docs 67 and 68). This motion is ripe for disposition.

### A. **Plaintiff's Factual Allegations**

Plaintiff avers that, on February 20, 2006, while incarcerated at the State Correctional Institution at Graterford ("SCI-Graterford"), he was placed in "isolation." Second Am. Compl. (Doc. 43) ¶ 1. On June 12, 2007, he was questioned by Captain Thomas Dohman[1] regarding "illicit activity" involving corrections officers. Id. ¶¶ 23-24. Plaintiff denied involvement with any such activity and refused to speak with Dohman regarding the issue. Id. ¶ 25. Dohman confronted Plaintiff about a lawsuit that Plaintiff had filed naming Dohman, *inter alia*, as a defendant. Id. ¶ 26. Dohman also insisted that Plaintiff's name had appeared in the course of an investigation. Id. Dohman threated to return Plaintiff to the "'hole,'" and to recommend to Defendant Beard that Plaintiff be placed on the Restricted Release List ("RRL") for not providing the requested information, as well as for filing suit against the DOC. Id.

On June 13, 2007, Plaintiff was transferred to the State Correctional Institution at Houtzdale ("SCI-Houtzdale") and placed in isolation. Id. ¶ 27. Plaintiff was given a so-called "Other Report," indicating that he was to be placed in administrative custody ("AC"), as he

---

[1] Captain Dohman is not named as a Defendant in this cause of action.

"would pose an escape risk in a less secure status." Id. ¶ 28. Plaintiff requested to be provided

with the information on which the decision was based, and also sought an opportunity to respond

to the charge. Id. That opportunity came on or about June 14, 2007, when members of the

Program Review Committee ("PRC") – Defendants Britton, and Harnett, along with Deputy

Superintendent Cameron – appeared before Plaintiff. Id. ¶ 29. Defendant Britton reiterated the

reasoning for Plaintiff being held in AC. Plaintiff responded with "the Due process issues he had

raised" the prior day, and argued that he had never been before been charged or convicted of an

escape violation. Id.

Plaintiff avers that PRC members, including Defendants Britton and Close, as well as

Defendant Patrick, visited Plaintiff's cell on June 21, July 5, July 11, July 19, and July 26, 2007.

Id. ¶¶ 30-32, 34-35. They indicated that continuing attempts were being made to contact

SCI-Graterford to determine the reason why Plaintiff was being held in AC status, but that they

had not received a response. Plaintiff indicates that, as early as July 11, 2007, he explained to

Defendant Patrick that he had not broken rules that would justify his long confinement in

isolation, and asserted that he should be released pending the institution of any forthcoming

misconduct charges. Id. ¶ 32. On their visit of July 19, 2007, PRC members indicated that

Plaintiff's name had been mentioned during the course of an investigation of a corrections officer

at SCI-Graterford. Id. ¶ 34. On July 26, 2007, PRC informed Plaintiff that "a Graterford prison

guard had allegedly used Plaintiff's name to an individual on the street and that he could get

Plaintiff out of Graterford for favors." Id. ¶ 35. Plaintiff responded to these charges, indicating

that he had never authorized the use of his name, he was not interested in escape from SCI-

Graterford, and he he ever been charged with such an offense. He further argued to the PRC that

Captain Dohman had held him in AC for much longer than was allowed by DOC regulations to

conduct an investigation into these allegations, and that he felt that Dohman was intentionally delaying the investigatory process in order to "keep Plaintiff in the 'hole' for filing grievance complaints, and a lawsuit against him and others."  Id.  That same day, the PRC released Plaintiff into the general population at SCI-Houtzdale.  Id.

Plaintiff's stay in the general population would be short-lived.[2]  Plaintiff avers that, on September 21, 2007, Defendant Beard personally contacted Defendants Patrick and Britton, and instructed them to place Plaintiff back in solitary confinement.  Id. ¶ 37.  Plaintiff was informed by Defendant Britton that he would remain in isolation pending the investigation at SCI-Graterford.  Id. ¶ 37.  Plaintiff responded to Defendant Britton at this time that he had already served more than a year and a half in solitary, had never been charged with any misconduct, and had already been released.  Id.  Defendant Britton responded that the directive came from the "Central office [sic]," and that he would contact Plaintiff with more information when it became available.  Id. ¶ 40.

Plaintiff avers that, on September 21, 2007, he received another so-called "Other Report" indicating that he was placed in AC because he was under investigation.  Id. ¶ 43.  On September 27, 2007, Defendants Britton, Close, and Harnett appeared at Plaintiff's cell and verbally related the same information.  On September 28, 2007, Defendant Patrick contacted Plaintiff to inform him that "Captain Dohman at Graterford had contacted Defendant Beard, and that [Defendant] Beard had contacted [Defendant Patrick] [sic] that Plaintiff was to be placed in isolation."  Defendant Patrick stated that the investigation would last up to fifteen days.  Id. ¶ 46.

---

[2] Plaintiff avers that he remained misconduct-free during his time in the general population of SCI-Houtzdale, and that he had been free of "class I misconduct violations" for more than five years prior to his release from AC.  Second Am. Compl. (Doc. 43) ¶¶ 36, 39.

On October 11, 2007, the PRC once again came to Plaintiff's cell, informing him that Captain Dohman was attempting to have Plaintiff added to the RRL. Plaintiff avers that he made arguments against this. Id. ¶ 47. Plaintiff further indicates that, sometime around November, 2007, he spoke with then-deputy Secretary Shirley Moore[3] regarding whether he was being considered for placement on the RRL. Id. ¶ 47.

Plaintiff avers that, on December 5, 2007, he appealed his AC confinement, pursuant to DC-ADM 802.[4] Id. ¶ 48. Plaintiff indicates that, on December 13, 2007, he spoke with members of the PRC, and made arguments supporting his release into the general population. Id. ¶ 50. Defendant Harnett indicated that Plaintiff should have received an "Other Report" regarding his confinement. Id. The following day, this report, dated October 26, 2007, was produced to Plaintiff. Id. ¶ 51. It indicated that Plaintiff posed an escape risk, and would be evaluated for continuing administrative confinement in 90 days. Id.

On December 20, 2007, Plaintiff was again seen by the PRC. Plaintiff avers that he sought information regarding the charges against him, but that the PRC members in attendance did not have the details, as the investigation was at SCI-Graterford. Defendant Britton indicated that Plaintiff's confinement would have to continue until Defendant Patrick "heard back from Defendant Beard."[5] Id. ¶ 52. Plaintiff's confinement was continued for an additional 90-day period by Defendants Britton, Close, and Harnett. Id. ¶ 53.

---

[3] Shirley Moore is, as of this writing, the Acting Secretary of the DOC. See http://www.cor.state.pa.us/portal/server.pt/community/department_of_corrections/4604 (last viewed Dec. 08, 2010).

[4] This is the DOC regulation dealing with the confinement of inmates to AC status. All administrative appeals regarding AC status must be made pursuant to this regulation.

[5] Plaintiff's indication that he was not given information regarding the charges against him is undermined by his repeated assertions that he was informed that he was an escape-risk.

On or about January 2, 2008, Defendant Beard placed Defendant on the RRL for a one year-minimum indefinite isolation sentence.  Id. ¶ 54.  Plaintiff asserts that Defendant Beard is the sole individual at the DOC who has the authority to remove him from the RRL.  Id. ¶ 55.  Plaintiff was informed by Defendant Patrick that he did not recommend to Defendant Beard that Plaintiff be placed on the RRL.  Id. ¶ 61.  This appears to have been related to Plaintiff through verbal communication on January 7, 2008, as well as written communication on January 8, 2008.  Id. ¶¶ 61-62.  Plaintiff indicates that 1) he did not receive notice on the date of placement on the RRL, nor was he informed of the rationale used to place him on the RRL, nor given an opportunity to respond.  Id. ¶ 63.  Plaintiff requested this information from Defendant Patrick, but this was denied.  Id. ¶ 65.

On February 20, 2008, Plaintiff was transferred from SCI-Houtzdale to the State Correctional Institution at Fayette ("SCI-Fayette").  Id. ¶ 66.  Plaintiff was seen by members of the PRC at SCI-Fayette – including Defendants Burns, Zaken, and Leggett – on February 22, 2008.  Id. ¶ 69.  Plaintiff sought information regarding his placement on the RRL, but the PRC did not have it.  Id.  The PRC members also indicated that they had no authority to release him, and indicated that they would see him again in 90 days.  Id.

On June 15, 2008, Plaintiff again appeared before the PRC.  The panel this time consisted of Defendants Leggett and Burns, as well as an individual identified as "Gallucci."[6]  Id. ¶ 72.  Plaintiff avers that he submitted an "inmate version" at this time, and argued that, given his lack of misconducts and placement on the RRL with "no due process," he should be released.  Id.

---

[6] Plaintiff makes several references in the body of his second amended complaint to a "Defendant Gallucci."  However, Gallucci is not named in the caption or "Parties" section of this document, and an investigation of the docket does not indicate that he has been served a copy of the second amended complaint.  For these reasons, "Gallucci" appears not to be a party to this case – and if he were, this Court would not have personal jurisdiction over him due to lack of service of process.  See Rule 12(b)(5) Fed. R. Civ. P.

Apparently, the PRC found Plaintiff's arguments to be persuasive, and they recommended him for "staffing."[7] Plaintiff was informed on July 11, 2008, that he had not received the votes necessary for a recommendation of removal from the RRL. Id. ¶ 74. On July 14, 2008. Plaintiff was informed by Defendant Zaken that he would be eligible for review for removal from the RRL in another year. Id. ¶ 75.

Plaintiff avers that, on July 14, 2008, he appealed the decision of the PRC to Defendant Coleman, pursuant to DC-ADM 802. Id. ¶ 76. Defendant Armel responded to this appeal, denying it. Id. ¶ 77. Plaintiff filed a "reconsideration appeal" with Defendant Coleman on July 29, 2008. Id. ¶ 78. Defendant Coleman denied this second appeal on an unspecified date. Id. ¶ 80. Plaintiff responded to this denial on August 27, 2008, reiterating his due-process concerns, but did not receive a response from Defendant Coleman. Id. ¶¶ 79, 82. Meanwhile, Plaintiff once again appeared before the PRC on August 7, 2008, seeking removal from the RRL, as well as information regarding his placement on the list in the first place. Id. ¶ 83. The PRC did not provide the requested information, and indicated that only Defendant Beard could remove Plaintiff from the RRL. Id. Plaintiff avers to having spoken with Defendant Leggett on September 22, 2008, regarding his RRL status, and to going before a PRC panel again on October 30, 2008. Id. ¶¶ 85, 90. As he had done previously, Plaintiff sought more information

_____

[7] Plaintiff describes the process of "staffing" as a vote, taken among several unnamed staff members, as to whether Plaintiff should be recommended for release from the RRL. Id. ¶ 73. The participants in this vote are not identified to Plaintiff, nor is the rationale for their decisions. Id. Plaintiff alleges that no "staffings" are successful at SCI-Fayette, because the staff members taking part in the vote are wary of being held responsible for violent acts that might be committed by inmates released from AC, especially in light of an alleged attack on a staff member perpetrated by an inmate identified as "New York, New York." Id. ¶¶ 68, 85, 96, 111, 121, 138. Indeed, Plaintiff had been informed by Defendant Zaken that he had not seen "any recent favorable RRL [s]taffings." Id. ¶ 96. However, this Court notes that this statement appears to be somewhat at odds with Plaintiff's allegations with respect to his Equal Protection claims. See Id. ¶ 91.

regarding the reason for his confinement, and the evidence that had been relied upon to place him in AC. This was denied, and Plaintiff was given an additional 90 days in AC. Id. ¶ 90. Plaintiff admits to having submitted an "inmate version" to the PRC at this time. Id.

Plaintiff sent appeals to Defendant Beard on September 2, November 28, and December 9, 2008. Id. ¶ 93. The subject matter of these appeals included "denial of due process issues, denial of exercise of religion, denial of being able to enroll in rehabilitative programs . . . for parole eligibility . . . [and] equal treatment issues." Id. These appeals were answered on September 23, 2008, and January 5, 2009. Id. ¶ 94. Plaintiff asserts that the issues he raised were not addressed, and he received no relief. Id.

On January 22, 2009, Plaintiff again appeared before a PRC panel – this time consisting of Defendants Zaken, Leggett, and Hughes. Id. ¶ 95. Plaintiff made arguments supporting his release to the general population, and again requested more information regarding his administrative confinement. Id. Plaintiff also submitted an "inmate version" to the panel. Id. Plaintiff's requests to the panel were again denied. Id.

Plaintiff was again informed that he did not receive a "staffing" recommendation for release from the RRL on June 25, 2009. Id. ¶ 107. As with Plaintiff's prior "staffing" experience, his requests for information regarding the rationale used by the participants was denied. Id. Plaintiff appeared before Gallucci and Defendants Gates and Zaken, arguing for his release into the general population, contesting the "staffing" process as being violative of due process, and seeking accommodations regarding attending religious services.[8] Id. ¶ 108.

_____

[8] Additionally, Plaintiff requested a Moorish Koran from Defendant Lewis on July 13, 2009. Despite assurances from this Defendant that one was available, Plaintiff never received it. Id. ¶¶ 109-10.

Plaintiff also submitted an "inmate version" regarding his "mental health issues under his conditions of confinements." Id. Plaintiff's requests were denied by the PRC panel. Id.

On or about July 2, 2000, Plaintiff contacted Defendant Coleman regarding the "staffing" procedure. Plaintiff claims that Defendant Coleman stated that Plaintiff's unit manager, Defendant Hughes, should submit Plaintiff's paperwork to Defendant Coleman's office so that it could be forwarded to the "Central Office" for review. Id. ¶ 112. However, on July 10, 2009, Plaintiff was informed by Defendant Hughes that "someone" had spoken to Defendant Coleman, and that he had changed his mind. Plaintiff wrote to Defendant Coleman on July 13, 2009, making arguments for release to the general population. Id. ¶ 115. Defendant Coleman responded on July 17, 2009, that Plaintiff's release was had not been supported by staff at the previous "staffing," and that his case would be reviewed again in six months. Id. ¶ 116. Plaintiff was informed by Defendant Buzas that Defendant Coleman had directed that Plaintiff's RRL status be reviewed in October, 2009.

Plaintiff was again seen by Defendant Coleman on September 1, 2009, during which time Plaintiff was assured that he would be "staffed" at his annual review in October. Id. ¶ 121. Plaintiff asserts that this review was delayed several times, and in fact never took place. Id. ¶¶ 122-24. Plaintiff was transferred to SCI-Frackville on November 17, 2009, and placed into solitary confinement there due to his listing on the RRL. Id. ¶ 126.

Throughout this alleged ordeal, Plaintiff indicates that he was denied employment due to his RRL status. See id. ¶ 71. His status also prevents him from enrolling in rehabilitative courses necessary for eligibility for parole. Id. ¶ 84, 98. Plaintiff indicates that his RRL status precludes him from attending religious services as well. Id. ¶ 88. Furthermore, Plaintiff avers that he suffers from several mental health issues, and indicates that they are, at least in part,

attributable to the time that he has spent in solitary confinement.  Id. ¶¶ 92, 118-20.  Plaintiff also asserts that he has been denied family visits.  Id. ¶ 100, 125.  Plaintiff also includes in his complaint a laundry-list of additional factors supporting his contention that inmates on the RRL have fewer privileges than those in the general population.  Id. ¶¶ 127-28

Additionally, Plaintiff indicates in his second amended complaint that, on October 31, 2008, he was informed by another inmate that Defendants Leggett, Zaken, and other staff were discriminating against "RRL Prisoners, Muslims, African Americans, as well as other prisoners in hearings being released back into the general population . . . ."  Id. ¶ 91.  Plaintiff also asserts that various inmates informed him that they had received favorable treatment from Defendants Zaken and Leggett with PRC recommendations because of their "Caucasian race." Id. ¶ 99.  Plaintiff further avers that Defendant Leggett attempted to assist an unnamed inmate, who was listed on the RRL, receive a recommendation for removal, but that Defendant Coleman denied this recommendation.  Finally, Plaintiff asserts that there are many high risk inmates at SCI-Fayette and SCI-Houtzdale, some of whom are labeled as "escape-risks," who are housed in the general population.  Id. ¶¶ 131-35

### B.  Standard of Review

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, reading the complaint in the light most favorable to the plaintiff, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the complaint."[9]  Phillips v. County

---

[9] To the extent that Defendants argue that Plaintiff's claims are procedurally barred for failing to exhaust administrative remedies, pursuant to 28 U.S.C. § 1997e, their motion should be, strictly speaking, captioned as a Rule 12(c) motion for judgment on the pleadings.  Spruill v. Gillis, 372 F.3d 218, 223 n.2 (3d. Cir. 2004).  This is because failure to exhaust has been held to be an affirmative defense.  Id. (citing Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002)).  However, the

of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A complaint must be dismissed even if the claim to relief is "conceivable," because a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.__, 129 S.Ct. 1937, 1949 (2009).

A court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. See Haines v. Kerner, 404 U.S. 519, 520 (1972). In a section 1983 action, a court must liberally construe a *pro se* litigant's pleadings and "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). "'Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.'" Higgins, 293 F.3d at 688 (quoting Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)).

When ruling on a 12(b)(6) motion, a court may take into consideration information in addition to the complaint, such as "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). (citations omitted). Moreover, a district court may consider indisputably authentic

distinction is largely academic, as there is no material difference in the standards of review for motions made pursuant to these Rules. Spruill, 372 F.3d at 223 n.2.

documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).


**C.    Analysis**

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. First, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)). Plaintiff's legal claims against the Defendants can be grouped into six categories: 1) violations of the Due Process Clause of the Fourteenth Amendment; 2) violations of the Equal protection Clause of the Fourteenth Amendment; 3) violations of the Eighth Amendment's prohibition of cruel and unusual punishment; 4) retaliation against Plaintiff for engaging in speech protected by the First Amendment; 5) violations for Plaintiff's right to free exercise of religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA); and 6) violations of DOC policies. (Doc. 43) ¶¶ 152-96. Defendants make several arguments supporting the dismissal of Plaintiff's claims. These will be addressed *seriatim*.


**1.    Exhaustion of Administrative Remedies**

Defendants argue in their brief supporting their motion to dismiss that Plaintiff has failed to exhaust administrative remedies as to every claims that must be exhausted pursuant to

DC-ADM 804 – the default DOC administrative grievance regulation.  See Def.s' Br. in Supp.

Mot. to D. Second Am. Compl. (Doc. 61) at 5.  Defendants state, without making supporting

argument, that grievances must be made pursuant to DC-ADM 804 with respect to all of

Plaintiff's claims arising under the Eighth Amendment, the Equal Protection Clause, the First

Amendment prohibition of retaliation for engaging in protected speech, the right to free exercise

of religion under the First Amendment and the RLUIPA.  Id. at 9.  However, Defendants

explicitly concede – if only for the purposes of the instant motion – that Plaintiff has arguably

exhausted his claims regarding his confinement in administrative custody, which must be grieved

pursuant to DC-ADM 802.  Id. at 9 n.2.  In support of their exhaustion argument, Defendants

submit the affidavit of Mr. Michael Bell, as well as a of record eight grievances filed by Plaintiff

pursuant to DC-ADM 804.  Ex.s to Defs. Br. in Supp. of Mot. to D. (Doc. 61-1).

Under the Prisoner Litigation Reform Act ("PLRA"), the mandatory exhaustion

requirement requires the following:

> (a)     Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted.

42 U.S.C.. § 1997e(a).  Before filing a civil action, a prisoner-plaintiff must exhaust his

administrative remedies.  Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000), cert. granted, 531

U.S. 956 (2000), aff'd, 532 U.S. 731 (2001).  There is no "futility" exception to the

administrative exhaustion requirement.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002)

(citing Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000)).

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . ."). This is the functional equivalent of the procedural default requirement in the habeas context. Spruill, 372 F.3d at 228-29. While a prisoner must comply with prison procedures, "compliance with the administrative remedy scheme will be satisfactory if it is substantial." Id. at 228-29; Nyhuis, 204 F.3d at 77-78. Finally, the Court of Appeals for the Third Circuit has held that exhaustion is an affirmative defense, and, as such, must be pleaded and proven by the party asserting it. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

Plaintiff appears to concede that none of the grievances cited by Defendants that were made pursuant to DC-ADM 804 would be sufficient to exhaust the claims that are currently before this Court. However, Plaintiff responds to the exhaustion argument by asserting that all of his claims were so interrelated to his administrative confinement that a grievance pursuant to DC-ADM 804 would have been improper. See Pl.'s Br. in Supp. of Resp. to Def.s' Mot. to D. (Doc. 68) at 8. Instead, Plaintiff argues that he properly grieved all of his claims pursuant to DC-ADM 802.

Indeed even a cursory reading of the second amended complaint demonstrates that Plaintiff's allegations of constitutional violations are inextricably linked to his administrative confinement. Furthermore, aside from their bare assertion that Plaintiff should have grieved using the process outlined in DC-ADM 804, Defendants fail to provide any arguments why grieving under DC-ADM 802 was improper. Finally, Defendants failed to produce any evidence – indisputably authentic or otherwise – that Plaintiff failed to grieve his claims properly under

DC-ADM 802.  Consequently, this Court must conclude that Defendants have failed to meet their burden with respect to this affirmative defense.

### 2.  **Due Process**

Plaintiff alleges that Defendants Beard, Britton, Close, Harnett, Patrick, Coleman, Burns, Gates, Zaken, Hughes, Leggett, Armel, and Buzas violated his rights under the Due Process Clause of the Fourteen Amendment at various times and in various manners related to his administrative confinement and inclusion on the RRL.  (Doc. 43) ¶¶ 152-54, 159-66, 170-72.  In order to state a claim under the Due Process Clause, Plaintiff must first set out facts that demonstrate he had a protected liberty interest impaired by the Defendants' actions.  Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972).  Once a court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it.  Morrissey, 408 U.S. at 481.

As this Court noted in its adjudication of Defendant Beard's initial motion to dismiss, Plaintiff's claim is determined by reference to the Court of Appeals for the Third Circuit's decision in Shoats v. Horn, 213 F.3d 140 (3d Cir. 2000).  In Shoats, a prisoner had been placed in administrative custody and was maintained there in virtual isolation for eight years.  The court in Shoats noted that such a long-term placement clearly gave rise to procedural due process protections under the analysis mandated by Sandin v. Conner, 515 U.S. 472 (1995).  Nonetheless, relying upon Hewitt, 459 U.S. 460 (1983), the court of appeals found that informal, periodic review of the prisoner's administrative custody status satisfies the requirements of due process.  Shoats, 213 F.3d at 147.

Here, as with his initial complaint, the same analysis disposes of Plaintiff's claim. While, as in Shoats, the duration of Plaintiff's placement in solitary confinement appears to satisfy the requirement that a liberty interest be implicated, the periodic review he concedes has taken place provides the process due to him. Indeed, as is demonstrated in the second amended complaint (Doc. 43), and summarized in Part II.A of this Report, *supra*, Plaintiff asserts that his AC status and RRL membership were the subjects of numerous reviews by the PRCs and facility managers of both SCI-Houtzdale and SCI-Fayette, he was informed of the reason for his administrative confinement and inclusion on the RRL, and he was afforded numerous opportunities to state his views and make arguments supporting his release. Cf. Shoats, 213 F.3d at 144-45 (citing Hewitt, 459 U.S. at 476). While the PRC has less power to remove Plaintiff from the RRL under the current version of DC-ADM 802 than was available when the court of appeals decided Shoats, see 213 F.3d 140, members still are able to make recommendations to the ultimate decision-maker regarding Plaintiff's confinement. This, combined with the periodic nature of the review, is all that due process requires with respect to these circumstances. See Bowen v. Ryan, 248 Fed.Appx. 302, 304-05 (3d Cir. 2007)

That Plaintiff disagrees with the Defendant Beard's decision to place him in solitary confinement, and with the several, periodic decisions since that time to keep him in solitary confinement is insufficient to state a claim for denial of due process. The Supreme Court explained the scope of discretion allowed to prison administrators in circumstances similar to Plaintiff's:

> In assessing the seriousness of a threat to institutional security, prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners inter se, and the like. In the volatile atmosphere of a prison, an

> inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, like that of those making parole decisions, turns largely on purely subjective evaluations and on predictions of future behavior.

Hewitt, 459 U.S. at 474.  Thus, as the Court of Appeals for the Third Circuit noted in Shoats, a prisoner may be placed in administrative confinement, even where no misconduct has occurred, and all that is required is that the prison provide an opportunity for the prisoner to contest the "purely subjective evaluation" of his dangerousness.  Again, the holding in Shoats is instructive: "[b]ecause [the inmate] has failed to provide any support for his assertions that his PRC reviews were constitutionally inadequate, we hold that the periodic reviews conducted by the PRC . . . comport with the minimum constitutional standards for due process."  Shoats, 213 F.3d at 147.

Plaintiff's mere placement in AC and the RRL was not sufficient to implicate a liberty interest.  Furthermore, while the atypical and significant hardship created by the extreme duration of Plaintiff's isolation appears to have implicated a liberty interest, Plaintiff's own pleadings indicate that he was informed of the charges against him – that he was an escape risk – as early as June 13, 2007, and was first seen by the PRC at SCI-Houtzdale the following day. (Doc. 43) ¶¶ 27-29.  Furthermore, Plaintiff's factual assertions in his pleading indicate that he has been allowed to respond to this charge on multiple occasions.  Consequently, Plaintiff's claims of due process violations against Defendants, which include both Counts I and II of the second amended complaint (Doc. 43) ¶¶ 152-72, should be dismissed.

### 3.  **Prison Regulations**

Defendants interpret Plaintiff to seek, in his second amended complaint, recovery for alleged deviations from established DOC policy under DC-ADM 802.  (Doc. 61) at 13.[10]

To the extent that Plaintiff seeks to recover directly because of these alleged deviations, he fails to state a claim upon which relief can be granted.  As stated above, a suit brought pursuant to the Civil Rights Act of 1871 can provide relief only for deprivations of rights, privileges, or immunities secured by the Constitution or laws of the United States.  Parratt, 451 U.S. at 535.  As Defendants correctly assert, State agency policy interpretations do not, in and of themselves, create a right, and do not have the force of law.  See Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d. Cir. 2004).  Indeed, even violations of State laws do not give rise to a cause of action under § 1983.  Elkin v. Fauver, 969 F.2d 48, 52 (3d Cir. 1992) ("[a]n alleged violation of state law, however, does not state a claim under section 1983.") (cert. denied, 506 U.S. 977 (1992)).  Furthermore, any attempt to carve out a State-created federal right from the language of a prison regulation must fail, as that methodology was explicitly rejected by the Supreme Court in Sandin.  515 U.S. at 483.  For these reasons, any claims by Plaintiff seeking redress solely for the departure from DOC policy should be dismissed.

### 4. **Eighth Amendment**

Plaintiff claims that Defendants Beard, Coleman, Gates, Zaken, and Leggett violated the Cruel and Unusual Punishment Clause of the Eighth Amendment by subjecting him, for an extended period of time, to the "harsh conditions of [solitary] confinement."  (Doc. 43) ¶¶ 177-

---

[10] Plaintiff's response appears to indicate both that he seeks recovery for these alleged deviations, and that these deviations are evidence that he has suffered a deprivation of a liberty interest at the hands of Defendants.  (Doc. 68) at 21-22.  This Court addresses the latter argument in Part II.C.2 of this Report, *supra*.

78. As summarized in Part II.A of this Report, *supra*, Plaintiff submits a lengthy list of differences in conditions of confinement between AC and the general population. Defendants argue that Plaintiff has failed to state a claim with this list of difference "because none of them is an atypical and significant hardship of prison life." (Doc. 61) at 15.

As was explained in this Court's Report recommending the dismissal of Plaintiff's initial complaint (Doc. 31), in order to state an Eighth Amendment claim, Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). To violate the Eighth Amendment's prohibition of cruel and unusual punishment, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id, at 834 (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions – considered alone constitutionally insufficient – may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." See Wilson v. Seiter, 501 U.S. 294, 304 (1991). In applying this test, the Court acknowledges that "[t]he Constitution . . . does not mandate comfortable prisons." Wilson, 501 U.S. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir.1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).

The practice of housing certain problem prisoners in isolation from other inmates and providing only limited exercise is not a condition of confinement that violates the Eighth Amendment. "'[S]egregated confinement in solitary or maximum security is not per se banned by the Eighth Amendment.'" Clifton v. Robinson, 500 F.Supp. 30, 34 (E.D.Pa. 1980) (quoting Burns v. Swenson, 430 F.2d 771, 777 (8th Cir. 1979)). Further, "'isolation from companionship, restriction on intellectual stimulation[,] and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render [solitary] confinement unconstitutional absent other illegitimate deprivations.'" In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999) (quoting Sweet v. South Carolina Dept. of Corrections, 529 F.2d 854, 861 (4th Cir.1975)) (en banc); Jones v. Beard, No. 2:07cv9512008 WL 2512673, at *4 (W.D.Pa. Jun. 23, 2008). In sum, Plaintiff's claim with respect to the conditions of his solitary confinement fails because has not identified any "illegitimate" deprivation of a constitutional right.

Plaintiff also asserts that his prolonged confinement has resulted in a deterioration of his "mental health and sanity, and aggravate pre-mental health problems." (Doc. 43) ¶ 177. Additionally, Plaintiff contends that the above-named Defendants were made actually aware of these effects, but remained willfully indifferent to his alleged suffering. (Doc. 43) ¶¶ 177-182. In their brief, Defendants do not explicitly respond to these assertions.

A prison official's deliberate indifference to an inmate's serious medical need constitutes a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. See, e.g., Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). However, in order to state a claim, a prisoner must demonstrate that his need is objectively "sufficiently serious." Farmer, 511 U.S. at 834 (citations omitted). A medical need qualifies as "serious" for the purposes of an analysis under

the Eighth Amendment when, for example, "it . . . has been diagnosed by a physician as requiring treatment." <u>Monmouth County Corr. Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987). A mental illness may constitute a serious medical need. <u>See</u> <u>Inmates of the Allegheny County Jail v. Pierce</u>, 612 F.2d 754, 763 (3d Cir. 1979).

Second, an inmate must demonstrate deliberate indifference by prison officials with respect to his objectively serious need – i.e., that the official was aware of a substantial risk of serious harm to the prisoner, but disregarded it by failing to take steps to abate it. <u>Goodrich v. Clinton County Prison</u>, 214 Fed.Appx. 105, 110 (3d Cir. 2007) (<u>citing</u> <u>Farmer</u>, 511 U.S. 837). Deliberate indifference can be shown, *inter alia*, by prison authorities' denial of reasonable requests for medical treatment, "'and such a denial exposes the inmate to undue suffering.'" <u>Goodrich</u>, 214 Fed.Appx. at 111 (quoting <u>Lanzaro</u>, 834 F.2d a 346 (internal quotations and citations omitted)). Deliberate indifference could also be shown "'where knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care'" or where "'prison authorities prevent an inmate from receiving recommended treatment . . . or deny access to [a] physician capable of evaluating the need for such treatment.'" <u>Goodrich</u>, 214 Fed.Appx. at 111, (quoting <u>Lanzaro</u>, 834 F.2d at 347-47 (internal quotations and citations omitted)).

Assuming, *arguendo*, that Plaintiff has succeeded in pleading that his mental problems, allegedly stemming from his solitary confinement, qualify as serious medical needs under Eighth Amendment jurisprudence, and that Defendants were actually aware of these serious medical needs, Plaintiff has still failed to plead deliberate indifference because he has failed to allege any interference whatsoever, on the part of Defendants, with his attempts to receive medical treatment. Taking Plaintiff's argument to its logical conclusion, any inmate who suffered from mental health issues, even while in the general population, and made prison officials actually

aware of these issues, could raise an Eighth Amendment claim if he or she were not released from incarceration. Clearly, the Eighth Amendment does not require this – just as it does not require Defendants to release Plaintiff from administrative custody under the circumstances pleaded by Plaintiff in his second amended complaint. Consequently, because Plaintiff has not alleged any interference on the part of Defendants with respect to his allegedly necessary medical treatment, Plaintiff has failed to state a claim under the Eighth Amendment, and Defendant's motion to dismiss, with respect to this claim, should be granted.[11]  However, as amendment would not necessarily be futile, Plaintiff dismissal of this claim should be without prejudice to Plaintiff amending his claims, subject to the mandates of Rule 11 of the Federal Rules of Civil Procedure.

### 5. **Equal Protection**

Plaintiff alleges that Defendants Burns, Zaken, Leggett, Gates and Hughes, violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment. (Doc. 43) ¶¶ 173, 175. Defendants raise no arguments in their motion to dismiss attacking the merits of Plaintiff's equal protection claims, and instead rely solely on their procedural default argument,

---

[11] To the extent that Defendants do not address Plaintiff's Eighth Amendment claim with respect to his alleged mental health woes, it is still proper for this Court to address the issue *sua sponte*. 28 U.S.C.§ 1915 (as amended) requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Thus, a court must dismiss, *sua sponte*, a complaint that lacks arguable merit in fact or law. Stackhouse v. Crocker, 266 Fed.Appx. 189, 190 (3d Cir. 2008) (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The standard for reviewing a complaint under this section 1915(e)(2)(B) is the same as that for determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999); see also Banks v. Mozingo, No. 08-004, 2009 WL 497572, at *6 (W.D.Pa. Feb. 26, 2009) (Cercone, J.). As Plaintiff has failed to state a claim with respect to this issue as a matter of law, dismissal is proper pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

which is deficient for the reasons set forth in Part II.C.1 of this Report, *supra*. Consequently, to the extent that it seeks dismissal of Plaintiff's equal protection claims, Defendants' motion to dismiss should be denied.

### 6. <u>First Amendment Retaliation</u>

Plaintiff alleges that Defendant Beard placed him in isolation and on the RRL in retaliation for filing suit against the DOC, and for refusing to cooperate with an investigation instituted by Dohman at SCI-Graterford. (Doc. 43) ¶¶ 192-93. Defendants raise no arguments in their motion to dismiss attacking the merits of these claims, and instead rely solely on their procedural default argument, which, as noted above, is deficient for the reasons set forth in Part II.C.1 of this Report, *supra*. Consequently, to the extent that it seeks dismissal of Plaintiff's First Amendment Retaliation claims, Defendants' motion to dismiss should be denied.

### 7. <u>Free Exercise of Religion and RLUIPA</u>

Finally, Plaintiff alleges that Defendants Coleman, Gates, Zaken, Leggett and Lewis denied Plaintiff's rights under the Free Exercise Clause of the First Amendment, as well as the RLUIPA. (Doc. 43) ¶¶ 186-87. Defendants raise no arguments in their motion to dismiss attacking the merits of these claims, and instead rely solely on their procedural default argument, which has been rejected. Consequently, to the extent that it seeks dismissal of these claims, Defendants' motion to dismiss should be denied.

# III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motion to Dismiss (Doc. 60) be granted in part and denied in part.  Defendants' motion should be granted with respect to Plaintiff's claims of violations of the Due Process Clause of the Fourteens Amendment, the Cruel and Unusual Punishment Clause of the Eighth Amendment, and violation of DOC policy.  Defendants' motion to dismiss should be denied with respect to all other claims.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C) and Local Rule 72.D.2, objections to this report and recommendation shall be filed on or before December 30, 2010.  Failure to timely file objections may constitute a waiver of any appellate rights.

s/Cathy Bissoon
CATHY BISSOON
UNITED STATES MAGISTRATE JUDGE

Date:   December 16, 2010

cc:
CHRIS WASHINGTON-EL
CW-2075
1111 Altamont Blvd.
Frackville, PA 17931