**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRIS WASHINGTON-EL, | ) | |
| | ) | Civil Action No. 08 - 1688 |
| Plaintiff, | ) | |
| | ) | District Judge Joy Flowers Conti |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| JEFFREY BEARD, et al | ) | ECF No. 82 |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

## I.     RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 82) be granted in part and denied in part. It is recommended that the motion be granted and Plaintiff's claims be dismissed with prejudice with respect to Plaintiff's claims regarding (1) violation of due process in relation to the denial of an impartial tribunal, (2) violation of the free exercise of religion under the First Amendment in relation to being denied attendance at Islamic congressional meetings and services, and (3) violation of RLUIPA. It is recommended that the motion be denied as to Plaintiff's claims regarding (1) violation of due process in relation to his continued confinement in administrative custody and on the Restricted Release List, (2) violation of the Eighth Amendment in relation to the exacerbation of pre-existing mental health conditions due to prolonged isolation, (3) retaliation for engaging in speech protected by the First Amendment, and (4) violation of the free exercise of religion in relation to being denied a copy of the Koran.

Finally, it is recommended that Plaintiff's Eighth Amendment claim regarding the conditions of his confinement be dismissed without prejudice to Plaintiff filing a fourth amended complaint as discussed herein.

## II.    <u>REPORT</u>

Plaintiff, Chris Washington-El, initiated this prisoner civil rights suit under 42 U.S.C. § 1983, on December 10, 2008, by filing his motion to proceed *in forma pauperis*. (ECF No. 1.) Permission to proceed IFP was granted, and Plaintiff's complaint was filed on December 18, 2008. (ECF No. 4.) His initial complaint was directed solely at Defendant Jeffrey Beard, then Secretary of the Department of Corrections (DOC). (ECF No. 4.) Defendant Beard moved to dismiss the complaint (ECF No. 15), and this Court granted the motion without prejudice to Plaintiff filing an amended complaint (ECF No. 34).

Plaintiff filed an amended complaint which, in addition to Defendant Beard, named thirteen new DOC defendants. (ECF No. 39.) Soon thereafter, Plaintiff was granted leave to amend and filed a second amended complaint naming the same fourteen defendants. (ECF No. 43.) Defendants moved to dismiss Plaintiff's second amended complaint, which this Court granted in part and denied in part. (ECF No. 70.) Plaintiff filed his third amended complaint on May 2, 2011 (ECF No. 75), naming the same fourteen defendants.[1] Defendants now move to dismiss Plaintiff's third amended complaint (ECF No. 82).

---

[1]     Defendants include: Jeffrey Beard, George Patrick, Randall Britton, Deputy Supt. Close, F. Harnett, Brian Coleman, Deputy Supt. Burns, Deputy Supt. Gates, Michael Zaken, Eric Armel, Captain Leggett, Sherwood Hughes, Stephen Buzas, and Frank Lewis. According to Plaintiff's third amended complaint, defendants are being sued only in their individual capacities.

## A. Plaintiff's Allegations[2]

Plaintiff avers that, on February 20, 2006, while incarcerated at the State Correctional Institution at Graterford ("SCI-Graterford"), he was placed in "isolation." (ECF No. 75 at 2.) On June 12, 2007, he was questioned by Captain Thomas Dohman[3] regarding "illicit activity" involving corrections officers. Id. at 2-3. Plaintiff denied involvement with any such activity and refused to speak with Dohman regarding the issue. Id. at 3. Dohman confronted Plaintiff about a lawsuit that Plaintiff had filed naming Dohman, *inter alia*, as a defendant. Id. at 3. Dohman also insisted that Plaintiff's name had appeared in the course of an investigation. Id. Dohman threatened to return Plaintiff to the "hole," and to recommend to Defendant Beard that Plaintiff be placed on the Restricted Release List ("RRL") for not providing the requested information, as well as for filing suit against the DOC. Id.

On June 13, 2007, Plaintiff was transferred to the State Correctional Institution at Houtzdale ("SCI-Houtzdale") and placed in isolation. Id. Plaintiff was given a so-called "Other Report," indicating that he was to be placed in administrative custody ("AC"), as he "would pose an escape risk in a less secure status." Id. Plaintiff requested to be provided with the information on which the decision was based, and also sought an opportunity to respond to the charge. Id. That opportunity came on or about June 14, 2007, when members of the Program Review Committee ("PRC") – Defendants Britton and Harnett along with Deputy Superintendent Cameron – appeared before Plaintiff. Id. Defendant Britton reiterated the reasoning for Plaintiff being held in AC. Plaintiff responded with "the Due process issues he had

---

[2]    Upon careful examination of both the second and third amended complaints, the Court notes that Plaintiff's allegations have, for the most part, remained unchanged. Therefore, the Court incorporates Plaintiff's allegations as they were set forth in the Report and Recommendation on Defendants' motion to dismiss Plaintiff's second amended complaint dated December 16, 2010. (ECF No. 70.)

[3]    Captain Dohman is not named as a Defendant in this cause of action.

raised" the prior day, and argued that he had never before been charged or convicted of an escape violation. Id.

Plaintiff avers that PRC members, including Defendants Britton and Close, as well as Defendant Patrick, visited Plaintiff's cell on June 21, July 5, July 11, July 19, and July 26, 2007. Id. at 3-4. They indicated that continuing attempts were being made to contact SCI-Graterford to determine the reason why Plaintiff was being held in AC status, but that they had not received a response. Id. Plaintiff indicates that, as early as July 11, 2007, he explained to Defendant Patrick that he had not broken rules that would justify his long confinement in isolation, and asserted that he should be released pending the institution of any forthcoming misconduct charges. Id. On their visit of July 19, 2007, PRC members indicated that Plaintiff's name had been mentioned during the course of an investigation of a corrections officer at SCI-Graterford. Id. at 4. On July 26, 2007, PRC informed Plaintiff that "a Graterford prison guard had allegedly used Plaintiff's name to an individual on the street and that he could get Plaintiff out of Graterford for favors." Id. Plaintiff responded to these charges, indicating that he had never authorized the use of his name, he was not interested in escape from SCI-Graterford, and he had never been charged with such an offense. Id. He further argued to the PRC that Captain Dohman had held him in AC for much longer than was allowed by DOC regulations to conduct an investigation into these allegations, and that he felt that Dohman was intentionally delaying the investigatory process in order to "keep Plaintiff in the 'hole' for filing grievance complaints, and a lawsuit against him and others." Id. That same day, the PRC released Plaintiff into the general population at SCI-Houtzdale. Id.

Plaintiff's stay in the general population would be short-lived.[4]  Plaintiff avers that, on September 21, 2007, Defendant Beard personally contacted Defendants Patrick and Britton, and instructed them to place Plaintiff back in solitary confinement.  Id.  Plaintiff was informed by Defendant Britton that he would remain in isolation pending the investigation at SCI-Graterford. Id.  Plaintiff responded to Defendant Britton at this time that he had already served more than a year and a half in solitary, had never been charged with any misconduct, and had already been released.  Id.  Defendant Britton responded that the directive came from the "Central Office," and that he would contact Plaintiff with more information when it became available.  Id. at 4-5.

Plaintiff avers that, on September 25, 2007, he received another so-called "Other Report" indicating that he was placed in AC because he was under investigation.  Id. at 5.  On September 27, 2007, Defendants Britton, Close, and Harnett appeared at Plaintiff's cell and verbally related the same information.  Id.  On September 28, 2007, Defendant Patrick contacted Plaintiff to inform him that "Captain Dohman at Graterford had contacted Defendant Beard, and that [Defendant] Beard had contacted [Defendant Patrick] [sic] that Plaintiff was to be placed in isolation."  Id.  Defendant Patrick stated that the investigation would last up to fifteen days.  Id.

On October 11, 2007, the PRC once again came to Plaintiff's cell, informing him that Captain Dohman was attempting to have Plaintiff added to the RRL.  Id.  Plaintiff avers that he made arguments against this.  Id.  Plaintiff further indicates that, sometime around November, 2007, he spoke with then-deputy Secretary Shirley Moore regarding whether he was being considered for placement on the RRL.  Id.

---

[4]  Plaintiff avers that he remained misconduct-free during his time in the general population of SCI-Houtzdale, and that he had been free of "class I misconduct violations" for more than five years prior to his release from AC.  (ECF No. 75 at 4.)

Plaintiff avers that, on December 5, 2007, he appealed his AC confinement, pursuant to DC-ADM 802.[5]  Id.  Plaintiff indicates that, on December 13, 2007, he spoke with members of the PRC, and made arguments supporting his release into the general population.  Id.  Defendant Harnett indicated that Plaintiff should have received an "Other Report" regarding his confinement.  Id.  The following day, this report, dated October 26, 2007, was produced to Plaintiff.  Id.  It indicated that Plaintiff posed an escape risk, and would be evaluated for continuing administrative confinement in 90 days.  Id.

On December 20, 2007, Plaintiff was again seen by the PRC.  Id.  Plaintiff avers that he sought information regarding the charges against him, but that the PRC members in attendance did not have the details, as the investigation was at SCI-Graterford.  Id. at 5-6.  Defendant Britton indicated that Plaintiff's confinement would have to continue until Defendant Patrick "heard back from Defendant Beard."[6]  Id. at 6.  Plaintiff's confinement was continued for an additional 90-day period by Defendants Britton, Close, and Harnett.  Id.

On or about January 2, 2008, Defendant Beard placed Plaintiff on the RRL for a one year-minimum indefinite isolation sentence.  Id.  Plaintiff asserts that Defendant Beard is the sole individual at the DOC who has the authority to remove him from the RRL.  Id.  Plaintiff was informed by Defendant Patrick that he did not recommend to Defendant Beard that Plaintiff be placed on the RRL.  Id.  This appears to have been related to Plaintiff through verbal communication on January 7, 2008, as well as written communication on January 8, 2008.  Id.  Plaintiff indicates that he did not receive notice on the date of placement on the RRL, nor was he

_____

[5]    This is the DOC regulation dealing with the confinement of inmates to AC status.  All administrative appeals regarding AC status must be made pursuant to this regulation.

[6]    Plaintiff's indication that he was not given information regarding the charges against him is undermined by his repeated assertions that he was informed that he was an escape risk.

informed of the rationale used to place him on the RRL, nor given an opportunity to respond.  Id.

Plaintiff requested this information from Defendant Patrick, but this was denied.  Id. at 6-7.

On February 20, 2008, Plaintiff was transferred from SCI-Houtzdale to the State

Correctional Institution at Fayette ("SCI-Fayette"), and placed in "isolation" within the RHU.

Id. at 7.  Plaintiff was seen by members of the PRC at SCI-Fayette – including Defendants

Burns, Zaken, and Leggett – on February 22, 2008.  Id.  Plaintiff sought information regarding

his placement on the RRL, but the PRC did not have it.  Id.  The PRC members also indicated

that they had no authority to release him, and indicated that they would see him again in 90 days.

Id.

On June 15, 2008, Plaintiff again appeared before the PRC.  Id.  The panel this time

consisted of Defendants Leggett and Burns, as well as an individual identified as "Gallucci."[7]  Id.

Plaintiff avers that he submitted an "inmate version" at this time, and argued that, given his lack

of misconducts and placement on the RRL with "no due process," he should be released.  Id.

Apparently, the PRC found Plaintiff's arguments to be persuasive, and they recommended him

for "staffing."[8]  Id.  Plaintiff was informed on July 11, 2008, that he had not received the votes

necessary for a recommendation of removal from the RRL.  Id.  On July 14, 2008, Plaintiff was

---

[7]      Plaintiff makes several references in the body of his third amended complaint to a "Defendant Gallucci."
However, Gallucci is not named in the caption or "Parties" section of this document, and an investigation of the
docket does not indicate that he has been served a copy of the complaint.  For these reasons, "Gallucci" appears not
to be a party to this case – and if he were, this Court would not have personal jurisdiction over him due to lack of
service of process.  See Rule 12(b)(5) Fed. R. Civ. P.

[8]      Plaintiff describes the process of "staffing" as a vote, taken among several unnamed staff members, as to
whether Plaintiff should be recommended for release from the RRL.  (ECF No. 75 at 7.)  The participants in this
vote are not identified to Plaintiff, nor is the rationale for their decisions.  Id.  Plaintiff alleges that no "staffings" are
successful at FCI-Fayette, because the staff members taking part in the vote are wary of being held responsible for
violent acts that might be committed by inmates released from AC, especially in light of an alleged attack on a staff
member perpetrated by an inmate identified as "New York."  Id. at 7, 9, 10, 11, 12, 14.  Indeed, Plaintiff had been
informed by Defendant Zaken that he had not seen "any recent favorable RRL staffing[s]."  Id. at 10.  However, this
Court notes that this statement appears to be somewhat at odds with Plaintiff's allegations with respect to his Equal
Protection claims.  Id. at 9.

informed by Defendant Zaken that he would be eligible for review for removal from the RRL in another year.  Id. at 7-8.

Plaintiff avers that, on July 14, 2008, he appealed the decision of the PRC to Defendant Coleman, pursuant to DC-ADM 802.  Id. at 8.  Defendant Armel responded to this appeal, denying it.  Id.  Plaintiff filed a "reconsideration appeal" with Defendant Coleman on July 29, 2008.  Id.  Defendant Coleman denied his second appeal on an unspecified date.  Id.  Plaintiff responded to this denial on August 27, 2008, reiterating his due-process concerns, but did not receive a response from Defendant Coleman.  Id. at 8-9.  Meanwhile, Plaintiff once again appeared before the PRC on August 7, 2008, seeking removal from the RRL, as well as information regarding his placement on the list in the first place.  Id. at 8.  The PRC did not provide the requested information, and indicated that only Defendant Beard could remove Plaintiff from the RRL.  Id.  Plaintiff avers to having spoken with Defendant Leggett on September 22, 2008, regarding his RRL status, and to going before a PRC panel again on October 30, 2008.  Id. at 9.  As he had done previously, Plaintiff sought more information regarding the reason for his confinement, and the evidence that had been relied upon to place him in AC.  Id.  This was denied, and Plaintiff was given an additional 90 days in AC.  Id.  Plaintiff admits to having submitted an "inmate version" to the PRC at this time.  Id.

Plaintiff sent appeals to Defendant Beard on September 2, November 28, and December 9, 2008.  Id. at 10.  The subject matter of these appeals included "denial of due process issues, denial of exercise of religion, denial of being able to enroll in rehabilitative programs . . . for parole eligibility . . . [and] equal treatment issues."  Id.  These appeals were answered on September 23, 2008, and January 5, 2009.  Id.  Plaintiff asserts that the issues he raised were not addressed, and he received no relief.  Id.

On January 22, 2009, Plaintiff again appeared before a PRC panel – this time consisting of Defendants Zaken, Leggett, and Hughes. <u>Id</u>. Plaintiff made arguments supporting his release to the general population, and again requested more information regarding his administrative confinement. <u>Id</u>. Plaintiff also submitted an "inmate version" to the panel. <u>Id</u>. Plaintiff's requests to the panel were again denied. <u>Id</u>.

Plaintiff was again informed that he did not receive a "staffing" recommendation for release from the RRL on June 25, 2009. <u>Id</u>. at 11. As with Plaintiff's prior "staffing" experience, his requests for information regarding the rationale used by the participants was denied. <u>Id</u>. Plaintiff appeared before Gallucci and Defendants Gates and Zaken, arguing for his release into the general population, contesting the "staffing" process as being violative of due process, and seeking accommodations regarding attending religious services.[9] <u>Id</u>. Plaintiff also submitted an "inmate version" regarding his "mental health issues under his conditions of confinements." <u>Id</u>. Plaintiff's requests were denied by the PRC panel. <u>Id</u>.

On July 2, 2009, Plaintiff contacted Defendant Coleman regarding the "staffing" procedure. <u>Id</u>. Plaintiff claims that Defendant Coleman stated that Plaintiff's unit manager, Defendant Hughes, should submit Plaintiff's paperwork to Defendant Coleman's office so that it could be forwarded to the "Central Office" for review. <u>Id</u>. However, on July 10, 2009, Plaintiff was informed by Defendant Hughes that "someone" had spoken to Defendant Coleman, and that he had changed his mind. <u>Id</u>. Plaintiff wrote to Defendant Coleman on July 13, 2009, making arguments for release to the general population. <u>Id</u>. at 12. Defendant Coleman responded on July 17, 2009, that Plaintiff's release has not been supported by staff at the previous "staffing,"

---

[9]     Additionally, Plaintiff requested a Moorish Koran from Defendant Lewis on July 13, 2009. Despite assurances from this Defendant that one was available, Plaintiff never received it. (ECF No. 75 at 11.)

and that his case would be reviewed again in six months. Id. Plaintiff was informed by Defendant Buzas that Defendant Coleman had directed that Plaintiff's RRL status be reviewed in October, 2009. Id.

Plaintiff was again seen by Defendant Coleman on September 1, 2009, during which time Plaintiff was assured that he would be "staffed" at his annual review in October. Id. at 12-13. Plaintiff asserts that this review was delayed several times, and in fact never took place. Id. at 13. Plaintiff was transferred to SCI-Frackville on November 17, 2009, and placed into solitary confinement there due to his listing on the RRL. *See* (ECF No. 43 at 25.)

Throughout this alleged ordeal, Plaintiff indicates that he was denied employment due to his RRL status. *See* (ECF No. 75 at 7.) His status also prevents him from enrolling in rehabilitative courses necessary for eligibility for parole. Id. at 9, 10. Plaintiff indicates that his RRL status precludes him from attending religious services as well. Id. at 9. Furthermore, Plaintiff avers that he suffers from several mental health issues, and indicates that they are, at least in part, attributable to the time that he has spent in solitary confinement. Id. at 9, 12.

Additionally, Plaintiff indicates that, on October 31, 2008, he was informed by another inmate that Defendants Leggett, Zaken, and other staff were discriminating against "RRL Prisoners, Muslims, African Americans, as well as . . . other prisoners in hearings being released back into the general population . . . ." Id. at 9. Plaintiff also asserts that various inmates informed him that they had received favorable treatment from Defendants Zaken and Leggett with PRC recommendations because of their "Caucasian race." Id. at 10. Plaintiff further avers that Defendant Leggett attempted to assist an unnamed inmate, who was listed on the RRL, receive a recommendation for removal, but that Defendant Coleman denied this recommendation. Id. at 11. Finally, Plaintiff asserts that there are many high risk inmates at

SCI-Fayette and SCI-Houtzdale, some of whom are labeled as "escape-risks," who are housed in the general population. Id. at 13.

## B. Standard of Review

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and read them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 556 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level." Id. at 555. The court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Additionally, a civil rights claim "must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably

authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gills, 372 F.3d 218, 223 (3d Cir. 2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003). In a section 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)). *See also* Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting Higgins, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See*, *e.g.*, Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002); Riddle v. Mondragon, 83 F.3d 1197, 2102 (10th Cir. 1996).

### C. Analysis

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. First, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds* by Daniels v. Williams, 474 U.S. 327, 330-331 (1986). The legal claims contained

within Plaintiff's third amended complaint can be grouped into six categories: 1) violations of procedural and substantive Due Process under the Fourteenth Amendment; 2) violations of the Eighth Amendment's prohibition of cruel and unusual punishment; 3) violations of the Equal Protection Clause of the Fourteenth Amendment; 4) retaliation against Plaintiff for engaging in speech protected by the First Amendment; 5) violations of Plaintiff's right to free exercise of religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); and 6) violations of the Pennsylvania Mental Health Procedures Act.[10] Plaintiff, however, voluntarily dismissed his substantive due process, equal protection, and Pennsylvania Mental Health Procedures Act claims on December 27, 2011. (ECF No. 91.) As such, those claims will not be considered and the Court will address the remaining claims in turn.

## 1. Procedural Due Process

Plaintiff alleges that Defendants Beard, Britton, Close, Harnett, Patrick, Coleman, Burns, Gates, Zaken, Hughes, Leggett, Armel, and Buzas violated his rights under the Due Process Clause of the Fourteenth Amendment at various times and in various manners related to his administrative confinement and inclusion on the RRL. (ECF No. 75 at 14-15.)

### a. Continued Confinement

First, the Court notes that Plaintiff's due process claim regarding his initial placement in administrative segregation and on the RRL was dismissed with prejudice in this Court's

---

[10]     Although the Court did not grant Plaintiff leave to raise additional legal claims in its order dated March 11, 2011, Plaintiff's third amended complaint included two additional claims – violations of substantive due process and the Pennsylvania Mental Health Procedures Act. Shortly after filing his third amended complaint, Plaintiff filed a motion for leave to include the state tort law and substantive due process claims explaining why his new claims should be allowed to proceed and requesting that the Court not dismiss or strike them *sua sponte*. (ECF No. 76.) Because no motion to strike or dismiss Plaintiff's newly-raised claims had been filed and Judge Bissoon had not recommended doing so *sua sponte*, the Court denied the motion as premature, without prejudice to Plaintiff raising the same arguments again at a later date. (ECF No. 80.) Defendants did not object to Plaintiff raising the additional claims and briefed them in their motion to dismiss, however, because Plaintiff has since voluntarily dismissed the claims, the Court will not consider them in this Report.

Memorandum Opinion and Order dated March 11, 2011. (ECF No. 73.) However, Plaintiff's claim in relation to his continued confinement in administrative segregation and on the RRL, namely the lack of a constitutionally meaningful review process, survived dismissal. Id.

Defendants now move to dismiss Plaintiff's claim that his due process rights were violated because the reviews of his AC/RRL were inadequate. (ECF No. 83 at 6-9.) Plaintiff argues that because his claim regarding his continued confinement survived Defendants' previous motion to dismiss, the law of the case doctrine bars the Court from revisiting this issue. (ECF No. 85.) Pursuant to this doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." United States v. Hoffecker, 530 F.3d 137, 165 (3d Cir. 2008) (quotations omitted). The doctrine does not preclude reconsideration of previously decided issues in "extraordinary circumstances," such as where "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." In re City of Philadelphia Litig., 158 F.3d 711, 718 (3d Cir. 1998). Defendants respond that Plaintiff's third amended complaint superseded his second rendering it of no legal effect and does not purport to incorporate his earlier complaints. See (ECF No. 86.) Thus, according to Defendants, this Court's ruling on the adequacy of a no longer operative complaint does not constitute the law of the case. Id. Be that as it may, the Court has carefully reviewed the allegations set out in both the second and third amended complaints and notes that Plaintiff's procedural due process claims in relation to his continued confinement are identical. As such, it is recommended that Defendant's motion to dismiss be denied as to this claim for the reasons set forth in this Court's March 11, 2011, Memorandum Opinion and Order.

### b. Impartial Tribunal

Plaintiff also claims that Defendant Beard violated his due process rights by denying him an "impartial tribunal" with respect to his placement on the RRL.  (ECF No. 75 at 14.)  Specifically, Plaintiff avers that Defendant Beard was an "impartial tribunal" because he "led[,] participated[,] and was directly involved in the investigation that led him also sentencing Plaintiff to a RRL sentence."  (ECF No. 75 at 14.)  Defendants correctly point out that this claim is barred by the law of the case doctrine because this Court previously dismissed Plaintiff's due process claims with regard to his initial placement on the RRL.  (ECF No. 83 at 6.)

To establish a due process claim under the Fourteenth Amendment, Plaintiff must demonstrate (1) the existence of a constitutionally protected liberty or property interest; and (2) constitutionally deficient procedures by the state in its deprivation of that interest.  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 571 (1972).  If there is no protected interest, there is no need to determine whether the alleged deprivation was without due process.  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).

In the December 16, 2010, Report and Recommendation on Defendants' motion to dismiss Plaintiff's second amended complaint, Magistrate Judge Bissoon recommended dismissing Plaintiff's due process claims (which included Plaintiff's denial of an impartial tribunal claim) because Plaintiff's mere placement in administrative confinement and on the RRL was not sufficient to implicate a liberty interest which entitled him to due process protections.  (ECF No. 70 at 17.)  In the Order on the Report dated March 11, 2011, this Court held that Plaintiff had no protected liberty interest with regard to his initial placement in administrative confinement and on the RRL, and therefore dismissed Plaintiff's related due process violation claims.  (ECF No. 73 at 3.)  This included Plaintiff's claim that he was denied due process when he was placed on

the RRL because Defendant Beard was an "impartial tribunal." Because placement on the RRL did not deprive Plaintiff of a protected liberty interest, no due process protections were triggered. *See* Bowen v. Ryan, 248 F. App'x. 302, 304 (3d Cir. 2007) ("Appellant's claim that he was placed on the Restrict Release List without due process was properly dismissed. Placement on the List did not deprive [Appellant] of his liberty, privileges, or any other constitutionally protected liberty interest.")

Having already determined that Plaintiff cannot establish a liberty interest with respect to his initial placement on the RRL, the Court will not revisit this issue.[11] As such, Defendants' motion to dismiss should be granted as to this claim pursuant to the law of the case doctrine.

## 2. Eighth Amendment

Plaintiff asserts two separate Eighth Amendment cruel and unusual punishment claims against Defendants Beard, Coleman, Gates, Zaken, and Legget: (1) deprivation of rights in connection with the conditions of his solitary confinement, and (2) exacerbation of pre-existing mental health conditions due to his lengthy stay in isolation. Both claims were presented in Plaintiff's second amended complaint.[12]

### a. Conditions of Solitary Confinement

Plaintiff asserts that Defendants violated the Eighth Amendment by subjecting him to "harsh conditions of confinement" for an extended period of time. (ECF No. 75 at 16, 17.) As

---

[11]     Moreover, Plaintiff has not met an exception to the law of the case doctrine which would allow the Court to reconsider its previous ruling.

[12]     In ruling on Defendants' motion to dismiss Plaintiff's second amended complaint, this Court construed the facts surrounding Plaintiff's Eighth Amendment claims as though Plaintiff was also presenting a claim for denial of medical care for his psychological conditions. *See* (ECF Nos. 70, 73.) Although the allegations with respect to Plaintiff's Eighth Amendment claims have not changed between his second and third amended complaints, Plaintiff states that he is not presenting a claim for denial of medical care. *See* (ECF No. 93 at 27.) Therefore, the Court will not construe the allegations as such.

summarized in Part II.A of this Report, *supra*, Plaintiff asserts numerous differences in conditions of confinement between AC and the general population. Defendants do not address this claim in their motion to dismiss.

As explained in this Court's prior Reports (ECF Nos. 31, 70), in order to state an Eighth Amendment claim, Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). To violate the Eighth Amendment's prohibition of cruel and unusual punishment, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal citation and quotation omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions – considered alone constitutionally insufficient – may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." *See* Wilson v. Seiter, 501 U.S. 294, 304 (1991). In applying this test, the Court acknowledges that "[t]he Constitution . . . does not mandate comfortable prisons." Wilson, 501 U.S. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir. 1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).

The practice of housing certain problem prisoners in isolation from other inmates and providing only limited exercise is not a condition of confinement that violates the Eighth Amendment. "'[S]egregated confinement in solitary or maximum security is not per se banned by the Eighth Amendment.'" Clifton v. Robinson, 500 F.Supp. 30, 34 (E.D. Pa. 1980) (quoting Burns v. Swenson, 430 F.2d 771, 777 (8th Cir. 1979)). Further, "'isolation from companionship, restriction on intellectual stimulation[,] and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render [solitary] confinement unconstitutional absent other illegitimate deprivations.'" In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999) (quoting Sweet v. South Carolina Dept. of Corrections, 529 F.2d 854, 861 (4th Cir. 1975)) (en banc); Jones v. Beard, No. 2:07cv9512008, WL 2512673, at *4 (W.D. Pa. June 23, 2008).

On December 16, 2010, Magistrate Judge Bissoon recommended dismissing Plaintiff's claim contained in his second amended complaint with respect to the conditions of his solitary confinement because Plaintiff had not identified any "illegitimate" deprivation of a constitutional right. (ECF No. 70 at 20.) In his objections to the Report and Recommendation, Plaintiff submitted a declaration alleging the existence of several troubling conditions with respect to his housing in solitary confinement. (ECF No. 72-4.) Because the new allegations did not appear in Plaintiff's second amended complaint, and it would have been improper to allow Plaintiff to amend his pleadings through his briefs, objections, or attachments, this Court dismissed this claim without prejudice and granted Plaintiff leave to amend.

Plaintiff's third amended complaint is practically identical to his second amended complaint with the exception of the additional two claims which he has since voluntarily dismissed. Apart from what was already included in his second amended complaint, Plaintiff has not alleged any

additional facts with regard to the conditions of his confinement.[13]  Importantly, Plaintiff did not even include within his third amended complaint those allegations that he submitted in his objections to the December 16, 2010, Report on Defendants' motion to dismiss his second amended complaint, which was the basis for allowing Plaintiff to amend as to this claim.  The Court is not allowed to consider as part of Plaintiff's third amended complaint what was contained in Plaintiff's objections to the December 16, 2010, Report.

As it stands, Plaintiff's Eighth Amendment claim based on the conditions of his confinement must be dismissed because he has still not identified any "illegitimate" deprivation of a constitutional right.  Nevertheless, it is recommended that Plaintiff be given one more chance to amend his complaint with respect to this claim.  If Plaintiff were not proceeding pro se the Court would not recommend allowing him a fourth chance to amend his complaint. This case is already three years old and we are still in the pleading stages! Plaintiff is warned that this will be his final opportunity to amend, and in doing so, he should include **all** allegations concerning the conditions of his confinement within his fourth amended complaint.   His fourth amended complaint must also include all claims remaining in this case as it will be a stand-alone document. Plaintiff **will not be permitted** to raise new allegations or amend his complaint through his briefs, objections, attachments, etc.  If Plaintiff fails to heed the Court's instructions, the undersigned will recommend either a dismissal with prejudice or will strike non-compliant portions of the amended complaint.

---

[13]        In his Motion to Strike Defendant's Motion to Dismiss, Plaintiff notes that the Eighth Amendment claims were only amended to include additional details about the conditions of his confinement that triggered an Eighth Amendment protection.  (ECF No. 85 at 5.)  However, the Court finds otherwise.

**b. Exacerbation of Pre-Existing Conditions Due to Lengthy Stay in Isolation**

Plaintiff asserts that his prolonged confinement has resulted in a deterioration of his "mental health and sanity, and aggravate[d] pre-mental health problems."  (ECF No. 75 at 16.)  Additionally, Plaintiff contends that Defendants were made actually aware of these effects, but remained willfully indifferent to his alleged suffering.  (ECF No. 75 at 16-17.)

As noted above, this claim was presented in Plaintiff's second amended complaint and, after Defendants moved to dismiss, the Court determined that Plaintiff had in fact plead an Eighth Amendment claim with respect to his mental health issues as they intersected with his extended solitary confinement.  (ECF No. 73.)  Defendants now move to dismiss this claim in Plaintiff's third amended complaint arguing that he has not demonstrated that Defendants were deliberately indifferent to his needs even assuming his mental health problems qualify as a serious medical need.  (ECF No. 83 at 14-16.)  As with Plaintiff's due process claim, Plaintiff argues that the Court should not revisit this issue because it already found that he had sufficiently plead an Eighth Amendment claim for purposes of surviving a motion to dismiss.  (ECF No. 85.)  Defendants respond to the contrary based on the fact that Plaintiff's third amended complaint superseded his second.  (ECF No. 86.)

As with Plaintiff's due process claim regarding his continued confinement, the Court finds that Plaintiff's second and third amended complaints are identical as to this claim.  As such, Defendant's motion to dismiss should be denied for the reasons set forth in this Court's March 11, 2011, Memorandum Opinion and Order.

**3.  First Amendment Retaliation**

Plaintiff alleges that Defendants Beard, Coleman, Burns, Leggett, Gates and Buzas retaliated against him in connection with his continuous confinement in AC and placement on the RRL

because of lawsuits he had previously filed against Defendants Coleman and Burns and other DOC officials and also because he refused to provide information to Captain Dohman in connection with a DOC investigation. (ECF No. 75 at 17-19.)

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." *See* White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 253, 530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

In order to state a prima facie case of retaliation, Plaintiff must demonstrate: (1) "the conduct in which he was engaged was constitutionally protected;" (2) "he suffered 'adverse action' at the hands of prison officials;"[14] and (3) "his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Following the satisfaction of a prima facie case of retaliation, the burden then shifts to Defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if Plaintiff had not engaged in the constitutionally protected activity. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for

---

[14] To show an "adverse action," Plaintiff must demonstrate that Defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520, 535 (E.D. Pa. June 24, 2002), quoting Allah v. Seiverling, 229 F.3d at 225. *See also* Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994) (a plaintiff "need not show a separate, independent injury as an element of the case ... because the retaliatory disciplinary charge strikes at the heart of an inmate's constitutional right to seek redress of grievances, [and] the injury to his right inheres in the retaliatory conduct itself.").

reasons reasonably related to a legitimate penological interest." <u>Rauser</u>, 241 F.3d at 334. In evaluating a prison official's opinion, "Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." <u>Bell v. Wolfish</u>, 441 U.S. 520, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

Plaintiff avers that his continued confinement in AC and placement on the RRL was a direct result of (1) his failure to provide information to Captain Dohman regarding a DOC investigation and (2) the lawsuits he had previously filed against Defendants Coleman and Burns and other DOC personnel. In support of this assertion, Plaintiff alleges that Dohman threatened to recommend to Defendant Beard that Plaintiff be placed on the RRL if he did not provide requested information in connection with a DOC investigation, and because he did not provide any information, Plaintiff asserts that Dohman presumably made the recommendation to Defendant Beard. (ECF No. 75 at 3.) Plaintiff further alleges that Defendant Coleman explicitly told him that the reason he was not recommending Plaintiff for return to general population was because he had not forgotten about the lawsuit Plaintiff filed against him years earlier. (ECF No. 75 at 8.) Also with regard to Defendant Coleman, Plaintiff asserts that he never followed through with submitting the necessary "staffing" paperwork for his removal from the RRL as Defendant Coleman said he would, presumably because of the lawsuit. With regard to Defendants Burns, Leggett, Gates, and Buzas, Plaintiff simply alleges that they were aware of the lawsuits he had filed and were motivated by such "not to provide due process [of] law in the Plaintiff's RRL detention and RRL removal process." (ECF No. 75 at 19.)

The Court concludes that Plaintiff has sufficiently pled the first two elements of retaliation under <u>Rauser</u> only to the extent he alleges he was retaliated against for the filing of law suits.

With respect to the first element, a prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. *See* Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981); Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995). However, a prisoner "has no constitutional right to avoid providing information relating to security." Williams v. Ricci, No. 08-622(MLC), 2008 U.S. Dist. LEXIS 97526, at *14-15 (D. N.J. Nov. 26, 2008). With respect to the second element, the Third Circuit has stated that a fact finder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (citations omitted).

Defendants do not address prongs one and two of the Rauser test, but instead argue that Plaintiff has not demonstrated that the filing of his previous lawsuits was the causal link (1) for his continued confinement in AC and placement on the RRL or (2) in Defendants failure to recommend him for removal from the RRL. The third element requires the plaintiff to show that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. This "motivational" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred. Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Goff v. Burton, 91 F.3d 1188 (8th Cir. 1996). Defendants assert that Plaintiff's placement in AC and on the RRL stemmed from him being classified as an escape risk, not because of the lawsuits he had previously filed against DOC personnel. Moreover, they point out that the lawsuit he filed against Defendants Coleman and Burns was filed in 2003, approximately five years before he was placed on the RRL, and therefore cannot support an inference of causality. While this may, in fact, be true, Plaintiff's allegations regarding Defendants' motivation for keeping him in AC, placing him on the RRL, and failing to recommend him for removal from

the RRL are enough to state a plausible claim upon which relief may be granted. Although Plaintiff's retaliation claim may ultimately not succeed on the merits, the Court cannot conclude at this stage of the proceedings that Defendants are entitled to relief. Therefore, it is recommended that Defendants' motion be dismissed as to this claim.

**4. Free Exercise of Religion and RLUIPA**

Plaintiff states that Defendants Beard, Coleman, Gates, Zaken, Leggett, and Lewis violated his First Amendment right to free exercise of religion and rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

**a. Free Exercise of Religion**

The First Amendment provides, *inter alia*, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. CONST. amend. I. "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).

Once a sincerely held religious belief is demonstrated, an inmate may establish that a prison regulation or practice violates the right to free exercise of religion by showing that it violates the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and O'Lone, 482 U.S. at 349. The standards delineated in Turner and O'Lone indicate that when a prison regulation or practice encroaches upon prisoners' rights to free exercise of religion, the regulation is valid if it is reasonably related to a legitimate penological interest. Turner, 482 U.S. at 89; O'Lone, 482 U.S. at 349. In applying this standard, courts must weigh four factors: first,

24

whether the regulation bears a "valid, rational connection" to a legitimate and neutral governmental objective; second, whether prisoners have alternative ways of exercising the circumscribed right; third, whether accommodating the right would have deleterious impact on other inmates, guards, and the allocation of prison resources generally; and fourth, whether alternatives exist that "fully accommodate[] the prisoner's rights at *de minimis* cost to valid penological interests." Turner, 482 U.S. at 89-91.

1. Koran

Plaintiff claims that he is of the Moorish American Islamic faith and that in October 2008, while housed in the RHU at SCI-Fayette, he requested a copy of the Koran and his request was denied by Defendant Lewis. (ECF No. 75 at 9, 17.) He claims that he requested a copy of a Koran again in July 2009, at which point he was told by Defendant Lewis that one would be provided to him but it never was. (ECF No. 75 at 11.)

Defendants fail to address Plaintiff's free exercise claim in connection with being denied a copy of the Koran. Rather, they only address Plaintiff's claim as it relates to his participation in Islamic congressional meetings as discussed below. Consequently, to the extent that it seeks dismissal of Plaintiff's free exercise claim regarding the Koran, Defendants' motion should be denied.[15]

---

[15] The Court notes, however, that Plaintiff raised an identical claim in one of his prior lawsuits filed in the Eastern District of Pennsylvania. *See* Washington-El v. Diguglielmo, No. 06-CV-4517, 2008 U.S. Dist. LEXIS 58304, at *6-10 (E.D. Pa. July 31, 2008). Specifically, Plaintiff claimed that he was denied a copy of the Koran while at SCI-Graterford because the DOC did not recognize the Moorish American Moslem faith. Id. at *9. The court found that, because of its proximity to the traditional Muslim faith, the Moorish American Moslem faith qualified as a religion for purposes of the First Amendment and additionally found the Koran to be an "essential religious text" of Plaintiff's religion. Id. Additionally, the court noted that the Pennsylvania administrative custody regulations permit inmates to possess Holy Korans. Id. (citing Griffin v. Vaughn, 112 F.3d 703, 707 (1997)). As such, the court denied summary judgment in favor of defendants. Id.

2. <u>Islamic Congressional Meetings and Services</u>

Plaintiff claims that Defendants Coleman, Gates, Zaken and Leggett denied him participation in Islamic congressional meetings and services that are mandated by his faith. (ECF No. 75 at 17.)  He further alleges that he was deprived of exercising his religious beliefs "due to [D]efendant Beard's 802 and 6.5.1 regulations that prohibit [P]laintiff from attending religious services."  (ECF No. 75 at 17.)

Defendants argue that Plaintiff cannot satisfy the <u>Turner</u> test because "his AC/RRL status bears a rational connection to the security concerns concerning his risk of escape; [he] has an available alternative in exercising his religion by praying in his cell as opposed to in a congregational setting; the effect on guards and other prisoners is to risk their security through his presence in a congregational setting; and alternatives are not available because extra security measures (such as the provision of extra correctional officers) would have to be taken to allow plaintiff to attend services."  (ECF No. 83 at 19.)

The first <u>Turner</u> factor requires courts to consider whether the restrictions on the plaintiff's religious rights bear a valid and rational connection to a legitimate and neutral objective.  <u>Turner</u>, 482 U.S. at 89-90.  Under this prong, courts accord great deference to the judgments of prison officials "charged with the formidable task of running a prison."  <u>O'Lone</u>, 482 U.S. at 353.  Moreover, "a measure of deference is especially appropriate when a regulation implicates prison security."  <u>Fraise v. Terhune</u>, 283 F.3d 506, 516 (3d Cir. 2002).  Here, the Court finds that the restriction placed on inmates in administrative custody from attending communal religious meetings and services is rationally related to legitimate security concerns.

Under <u>Turner</u>'s second factor, "courts must examine whether an inmate has alternative means of practicing his or her religion generally, not whether an inmate has alternative means of

engaging in the particular practice in question." DeHart v. Horn, 227 F.3d 47, 55 (3d Cir. 2000). While Defendants assert that Plaintiff is not prohibited from privately praying in his cell, Plaintiff contends that "group prayer" is "obligatory for Muslims" and "mandated by Islamic law." (ECF No. 93 at 12.) Turner requires only that an inmate have alternative means of practicing his or her religion generally, and not that an inmate have alternative means of engaging in any particular practice. Instead, there has been no violation of an inmate's free exercise rights as long as he retains the ability "to participate in other religious observances of [his] faith." O'Lone, 482 U.S. at 352. Where an inmate is "not deprived of all forms of religious exercise, but instead freely observe[s] a number of [his] religious obligations," the prison regulation is reasonable. Id. Similarly, the Third Circuit has stated that in inquiring whether there are alternative means to allow a prisoner to exercise his right, the right should be broadly construed to include "general religious activity." Cooper v. Tard, 855 F.2d 125, 129 (3d Cir. 1988). While Plaintiff may not be able to exercise his right to the free exercise of religion in the manner in which he prefers, he has not demonstrated that he is deprived of all alternative means of practicing his religion within the framework of prison regulations. Therefore, the second factor weighs in favor of Defendants.

In evaluating Turner's third factor, courts must examine the impact that accommodation of the prisoner's asserted right would have on other inmates, prison personnel, and the allocation of legitimate resources. O'Lone, 482 U.S. at 352. Given Plaintiff's AC/RRL status, accommodating his request to attend Islamic meetings and services could pose security threats that would require the presence of additional guards. This additional strain on prison resources would affect prison staff and other inmates. As such, the third factor also weighs in favor of Defendants.

Turner's fourth factor directs courts to assess whether there are alternatives to the regulation that would impose only "*de minimis* cost to valid penological interests." Turner, 482 U.S. at 91. "The absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id. However, "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." Id. Here, Plaintiff has not identified a ready alternative to the claimed intrusion. He merely asserts that he asked Defendants to consider some alternative means for him to attend his religious meetings and his requests were denied. (ECF No. 93 at 14-15.) The only alternative to Plaintiff's exclusion would be to provide more security during religious meetings and services to ensure order. However, reassigning more security to the chapel area greatly impacts other inmates, guards, and prison resources. Therefore, the cost of this alternative is not *de minimis*.

The Court concludes that the Turner factors weigh in favor of Defendants. The restriction on Plaintiff's religious right to attend Islamic congressional meetings and services due to his placement in administrative custody is reasonably related to legitimate penological interests. Thus, Defendants' motion should be granted as to this claim.

**b. RLUIPA**

"RLUIPA . . . protects institutionalized persons who are unable freely to attend their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). RLUIPA provides, in relevant part, that "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government

demonstrates that the burden furthers "a compelling interest" and adopted the "least restrictive means" to serve that interest. 42 U.S.C. § 2000cc-1(a)(1)-(2).

Under the circumstances of this case, Plaintiff cannot state a RLUIPA claim. To the extent Plaintiff seeks monetary damages against Defendants in their official capacities for RLUIPA violations, such relief is barred by the recent United States Supreme Court holding in Sossamon v. Texas, 131 S. Ct. 1651, 1660 (2011) (concluding that "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA"). Additionally, to the extent he seeks monetary damages against Defendants in their individual capacities, such relief is not available under RLUIPA.[16] *See* Nelson v. Miller, 570 F.3d 868, 885-89 (7th Cir. 2009); Rendelman v. Rouse, 569 F.3d 182, 187-89 (4th Cir. 2009); Porter v. Beard, No. 09-549, 2010 U.S. Dist. LEXIS 63413, at *17-18 (W.D. Pa. May 12, 2010); Logan v. Lockett, No. 07-1759, 2009 U.S. Dist. LEXIS 24328, at *9-10 (W.D. Pa. Mar. 25, 2009). Therefore, it is recommended that Defendants' motion be granted as to this claim.

## III.   CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 82) be granted in part and denied in part. It is recommended that the motion be granted and Plaintiff's claims be dismissed with prejudice with respect to Plaintiff's claims regarding (1) violation of due process in relation to the denial of an impartial tribunal, (2) violation of the free exercise of religion under the First Amendment in relation to being denied attendance at Islamic congressional meetings and services, and (3) violation of RLUIPA. It is recommended that the motion be denied as to

---

[16]   The Third Circuit has not addressed whether individuals can be held liable under RLUIPA in their individual capacities. *See* Brown v. D.O.C. PA, 265 F. App'x 107, 111 n.3 (3d Cir. 2008). However, the clear weight of authority thus far holds that they cannot.

Plaintiff's claims regarding (1) violation of due process in relation to his continued confinement in administrative custody and on the Restricted Release List, (2) violation of the Eighth Amendment in relation to the exacerbation of pre-existing mental health conditions due to prolonged isolation, (3) retaliation for engaging in speech protected by the First Amendment, and (4) violation of the free exercise of religion in relation to being denied a copy of the Koran. Finally, it is recommended that Plaintiff's Eighth Amendment claim regarding the conditions of his confinement be dismissed without prejudice to Plaintiff filing a fourth amended complaint as discussed herein. If Plaintiff fails to file a proper fourth amended complaint within the time allowed by the District Judge, then this Magistrate judge recommends that Plaintiff's Eighth Amendment claim regarding the conditions of confinement be dismissed with prejudice.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B)&(C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

Dated: February 3, 2012

Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc: Chris Washington-El
    CW-2075
    1100 Pike Street
    Huntingdon, PA 16654